IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ALSON ALSTON,                    :
      Plaintiff            :        No. 14-cv-02480
                           :
      v.                   :        (Judge Kane)
                           :
PENNSYLVANIA STATE               :
UNIVERSITY, et al.,              :
      Defendants           :

## MEMORANDUM

Before the Court is the Report and Recommendation of Magistrate Judge Carlson (Doc. No. 37), in which he recommends that the Court grant Defendants' motion to dismiss (Doc. No. 27), and dismiss Plaintiff's amended complaint (Doc. No. 25). Plaintiff filed and later amended objections to the Report and Recommendation (Doc. Nos. 38, 39), and Defendants filed a response to Plaintiff's objections (Doc. No. 40). For the reasons that follow, the Court will adopt Magistrate Judge Carlson's Report and Recommendation in full and dismiss the complaint.

## I.    BACKGROUND

This litigation stems from Plaintiff Alson Alston's lengthy dispute with Defendants concerning his law school financial aid. At the time he filed the complaint in this action, Plaintiff Alson Alston alleges that he was a 50-year old third year law student at Defendant Pennsylvania State University's Dickinson School of Law in Carlisle, Pennsylvania.[1] (Doc. No. 25 ¶ 1.) His elderly mother suffered from a variety of ailments ranging from diabetes to kidney cancer, and she required around-the-clock medical assistance. (Id.) Plaintiff was largely responsible for obtaining home-based healthcare for his mother or for providing such care

---

[1] The other defendants in this action are individual university employees.

1

himself.  (Id.)

Plaintiff obtained loans to finance his legal education through Penn State's Financial Aid Office.  (See id. ¶ 18.)  On October 4, 2013, Plaintiff first sought additional financial aid to help cover the expense of caring for his ailing mother.  (Id. ¶ 18) ("Oct. 4, 2013 – Alston makes first request of Financial Aid for increased borrowing authority to cover additional education costs (transportation and eldercare expenses), pursuant to the [Higher Education Act].") (parenthesis in original).  Over the next year, Plaintiff sought increased funding to cover "eldercare expenses," while financial aid administrators required Plaintiff to provide additional documents to demonstrate eligibility for the increased funding.  (Id. ¶¶ 20-58.)  Plaintiff's complaint identifies at least four school administrators with whom he communicated regarding his financial aid: the law school's financial aid director, the university's executive director for student aid, the secretary to the university's board of trustees, and the interim dean of the law school.  (Id. ¶¶ 13-16, 36-38.)  This litigation began while Plaintiff's financial aid status remained unresolved.[2]

Plaintiff initiated the above-captioned litigation by filing a complaint on December 30, 2014 (Doc. No. 1), and an emergency motion for a temporary restraining order on January 2, 2015 (Doc. No. 5).  On January 12, 2015, the Court issued an order denying Plaintiff's emergency motion.  (Doc. No. 19.)  Plaintiff filed an amended complaint on March 13, 2015 (Doc. No. 25), and Defendants filed a motion to dismiss the amended complaint on March 26, 2015 (Doc. No. 27).  The Court referred the motion to Magistrate Judge Carlson (Doc. No. 34), who issued the present Report and Recommendation on June 9, 2015 (Doc. No. 37).

---

[2] Plaintiff's subsequent filings with the Court indicate that, despite his difficulties with financial aid, he ultimately graduated from Penn State's law school in the top 15% of his class. (Doc. No. 39 at 2 n.2.)

Plaintiff's amended complaint can be organized into claims based on: substantive due process, procedural due process, equal protection, disability discrimination statutes, and state tort law.[3]  (Doc. Nos. 25, 37.)

## II.    LEGAL STANDARD

The Magistrate Act, 28 U.S.C. § 636, and Federal Rule of Civil Procedure 72(b), provide that any party may file written objections to a magistrate's proposed findings and recommendations.  In deciding whether to accept, reject, or modify the Report and Recommendation, the Court is to make a de novo determination of those portions of the Report and Recommendation to which objection is made.  28 U.S.C. § 636(b)(1); M.D. Pa. L.R. 72.3. The Report and Recommendation concerns a motion to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 27.)  The standards governing these motions is fully laid out in the Report and Recommendation.  (Doc. No. 37 at 7-9.)

## III.    DISCUSSION

In his Report and Recommendation, Magistrate Judge Carlson addresses each of Plaintiff's claims in turn.  Plaintiff's objections do not neatly track the Report and Recommendation, and at times do not state with specificity the portion of the Report and Recommendation to which the objection is addressed as required by applicable law.  See Goney v. Clark, 749 F.2d 5, 6-7 (3d Cir. 1984) (per curiam); see also (Doc. No. 38 ¶ 8) ("Everything

---

[3] In his amended complaint, Plaintiff formally separates his claims into eight counts: (1) violation of both substantive and procedural rights guaranteed by the Due Process Clause of the Fourteenth Amendment; (2) violation of rights secured by the Equal Protection Clause of the Fourteenth Amendment; (3) "violations actionable under section 1983," (4) state law negligence or breach of fiduciary duty; (5) defamation; (6) intentional infliction of emotional distress (IIED); (7) negligent infliction of emotional distress; (8) violation of the Americans with Disabilities Act and the Rehabilitation Act.  (Doc. No. 25.)

that Chief Magistrate Judge Carlson writes from that point on carries forth that illusory theme, resulting in the central conclusion of the R&R, that Penn State's actions do not rise to constitutional infringements[.]")  In other objections, Plaintiff raises novel factual assertions or legal claims not previously raised; however, objections to Reports and Recommendations are not vehicles for the introduction of facts and concepts that a magistrate judge could not have considered, because they were not before him or her.  (See Doc. No. 38 ¶ 19); see also 28 U.S.C. § 636(b)(1).  As such, the Court addresses each of Magistrate Judge Carlson's proposed findings in turn, considering Plaintiff's objections to each as those objections – liberally construed – may apply.

> a.     **Substantive due process**

The Report and Recommendations begins with due process.  Substantive due process claims challenge either legislative acts, such as laws or general enactments, or non-legislative acts, such as the arbitrary or capricious actions of an administrative officer.  (Doc. No. 37 at 11-12) (citing Nicholas v. Penn. State Univ., 227 F.3d 133, 139 (3d Cir. 2000)).  Magistrate Judge Carlson first recommends dismissing any legislative substantive due process challenge, because the actions of the financial aid administrators applied to Plaintiff in particular, and not generally to a broad range of people.  (Id. at 12.)  Plaintiff objects to this recommendation, claiming that Defendants' policies are generally applicable to the student body, so he should be permitted to raise a legislative substantive due process challenge.  (Doc. No. 39 at 11.)  Plaintiff's objection fails, because he has not challenged Defendants' policies, but rather, Defendants' alleged deviations from their policies and other federal policies in his particular case.  (See e.g., Doc. No. 25 ¶ 5) ("The actions of the Financial Aid Office are intentional, arbitrary choices,

4

inconsistent with its own and [Department of Education] regulations[.]")

Next, Magistrate Judge Carlson recommends dismissal of Plaintiff's non-legislative substantive due process claim because Plaintiff has not articulated a fundamental interest that may be vindicated through substantive due process.  (Doc. No. 37 at 16.)  According to Magistrate Judge Carlson, "[t]he Third Circuit has previously indicated that a graduate student's interest in continued academic enrollment was not a sufficiently fundamental interest as to trigger substantive due process protections."  (Id. at 4) (citing Mauriello v. Univ. of Med. & Dentistry of N.J., 781 F.2d 46 (3d Cir. 1986)).  Plaintiff objects, claiming that he has identified numerous fundamental interests that trigger substantive due process protections, including:

> "the right to engage in the legal profession as a lawyer, his successful completion of law school being a prerequisite; the right to contract to take out educational loans; a property right in his continued enrollment as a law school student at PSU because his good standing and past payments create an expectation that he is entitled to continue as a student; the right to the protection of his $150,000 investment in his law school education as well as Fifth Amendment protections against usurpation by PSU without compensation; the right and responsibility to protect the health and physical well-being of himself and his family, including his 84-year-old severely ill mother."

(Doc. No. 39-2 at 3.)  Plaintiff's objection lacks merit.  Even leaving aside the fact that many of these "interests" are not included in Plaintiff's amended complaint, Plaintiff cites no germane precedent to show that any of these interests is fundamental enough to trigger the protections of substantive due process.  See Kirby v. Loyalsock Twp. Sch. Dist., 837 F. Supp. 2d 467, 479 (M.D. Pa. 2011) (citing Nicholas, 227 F.3d at 141).  In addition, even were the Court to find that any of Plaintiff's professed interests are constitutionally fundamental, the alleged actions of Defendants cannot fairly be said to deprive him of those interests.  The interest that Plaintiff's allegations implicate most obviously is Plaintiff's interest in the timely and hassle-free

5

disbursement of student aid money.  The Court declines to characterize Defendants' actions as Plaintiff has characterized them in his objections: "No actions by public university administrators could be seen as more outrageous, unless they aimed guns [at] the heads of their students and elderly parents, then fired."  (Doc. No. 39 at 19.)  For these reasons, the Court will adopt the substantive due process recommendation of Magistrate Judge Carlson and overrule Plaintiff's objections on those points.

       **b.**       **Procedural due process**

Magistrate Judge Carlson recommends dismissing Plaintiff's procedural due process claims because he has not articulated a protected interest that is safeguarded by procedural due process, and that in any event, his pleadings indicate that the procedures afforded Plaintiff were more than adequate to satisfy procedural due process's minimum mandate.  (Doc. No. 37 at 16-18.)  Plaintiff objects, reciting the same list of interests quoted above and arguing that he has articulated a protected interest safeguarded by procedural due process.  (Doc. No. 39 at 13-14.) As to the process Defendants afforded to him during his financial aid application, Plaintiff objects that "the procedures violated were those identified by Penn State itself," and that the violation of Defendants' own procedures caused a one-year delay during which his mother's health and his own financial condition worsened.  (Doc. No. 39 ¶¶ 40-42.)

To survive a motion to dismiss a procedural due process claim, a plaintiff is required to plead facts supporting allegations that "(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'"  Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (quoting Alvin v. Suzuki, 227 F. 3d 107, 116 (3d

Cir. 2000)).  Leaving aside whether Plaintiff has stated a protected interest, the Court is satisfied

that the process afforded Plaintiff satisfies the minimum requirements of procedural due process.

Plaintiff's amended complaint details the interactive process by which he sought additional

financial aid, including bilateral communication with at least four university administrators and

repeated substantive correspondence.  (Doc. Nos. 25 ¶ 7; 37 at 18-19.)  Accordingly, the Court

will adopt Magistrate Judge Carlson's Report and Recommendation on procedural due process,

overrule Plaintiff's objections, and dismiss Plaintiff's procedural due process claim.

      **c.**      **Equal protection**

Magistrate Judge Carlson recommends dismissing Plaintiff's equal protection claim

because its "information and belief" pleading is insufficient to survive modern pleading

standards, and because Plaintiff has failed to sufficiently allege impermissible class-based

differential treatment.  (Doc. No. 37 at 21-23.)  Plaintiff objects, arguing that the amended

complaint "clearly stated that students without elderly parents were not subjected to the same

information, processing and funding denials that those members of his class were, based upon

his own conversations with other students."  (Doc. No. 39-2 ¶ 48.)  Plaintiff continues: "This

class distinction is comparable to that of <u>Loving v. Virginia</u>, in which interracial couples were

placed in a different class than same-race couples."  (<u>Id.</u>)

In addition to its racial equality mandate, the Fourteenth Amendment's Equal Protection

Clause essentially directs "that all persons similarly situated should be treated alike."  <u>City of

Cleburne, Tex., v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985).  Consequently, class-based

distinctions in official enactments must be "rationally related to a legitimate state interest."  <u>Id.</u> at

440.  The Court agrees with Magistrate Judge Carlson that Plaintiff's allegations of class-based

discrimination fail on both pleading grounds and as a matter of law.  Plaintiff alleges that he was

treated differently than other students applying for financial aid, because he underwent a lengthy

verification and compliance process that, as far as he believes, other students did not undergo.

(See Doc. No. 25 ¶¶ 107-109) ("Upon information and belief, Financial Aid does not subject

students outside Alston's class to these actions.")  Plaintiff's equal protections argument is not

based on any class-based distinction drawn in the financial aid regulations, but rather on the

processing of his application in his own particular case by Defendants.  (See id.)  Nowhere does

Plaintiff allege that the differential treatment was motivated by any class-based distinction, and

Plaintiff's amended complaint is devoid of supporting factual allegations to support his claim.

Consequently, the Court will adopt Magistrate Judge Carlson's Report and Recommendation on

equal protection, overrule Plaintiff's objections, and dismiss that part of Plaintiff's amended

complaint.

### d.      Federal disability discrimination statutes

Magistrate Judge Carlson recommends dismissing Plaintiff's claims under the

Americans with Disabilities Act and Section 504 of the Rehabilitation Act because he does not

credibly allege disability-based interference with his education.  (Doc. No. 37 at 24-28.)

Plaintiff objects, arguing that he requested dispensation for his disability from school

administrators who then "placed impermissible obstacles in his path."  (Doc. No. 39-2 ¶ 56.)

Section 504 of the Rehabilitation Act and Americans with Disabilities Act provide

coextensive protection to students.  (Doc. No. 37 at 26) (citing Hornstine v. Twp. of

Moorestown, 263 F. Supp. 2d 887, 904 (D.N.J. 2003)).  To state a claim, plaintiffs must

sufficiently allege that, "(1) they were handicapped individuals . . .; (2) they were otherwise

qualified for the program of benefits from which they had been excluded; (3) they have been

excluded solely because of these handicaps; and (4) the program from which they have been

excluded" is covered by the acts.  Sullivan v. City of Pittsburgh, Pa., 811 F.2d 171, 181-82 (3d

Cir. 1987).  To the extent Plaintiff attempts to plead facts to support a claim under these

provisions, his complaint falls well short.  As Magistrate Judge Carlson observes, Plaintiff does

not factually allege that Defendants' handling of his financial aid application was in any way

motivated by a disability.  (Doc. No. 37 at 27-28.)  Consequently, the Court will adopt

Magistrate Judge Carlson's Report and Recommendation on this claim, overrule Plaintiff's

objection, and dismiss those parts of his amended complaint.

       **e.**       **State law claims**

Magistrate Judge Carlson makes alternative recommendations with regard to Plaintiff's

state law claims.  First, because he recommends dismissal of Plaintiff's federal claims, and

because federal jurisdiction is premised on those federal claims, Magistrate Judge Carlson

recommends that the Court decline to exercise supplemental jurisdiction and dismiss the balance

of Plaintiff's complaint on that ground.  (Doc. No. 37 at 28-29.)  In the alternative, Magistrate

Judge Carlson considers the elements of each of Plaintiff's remaining state law claims, and

recommends dismissing each of them with prejudice.  (Id. at 31-34.)  Plaintiff objects to

Magistrate Judge Carlson's substantive analysis of his state law claims, but he states no position

on whether the Court should exercise supplemental jurisdiction.  (Doc. No. 39-2 ¶¶ 53-55.)  The

Court will adopt the first of Magistrate Judge Carlson's alternative findings and decline to

exercise supplemental jurisdiction, although the Court agrees with Magistrate Judge Carlson's

thorough and thoughtful consideration of the substance of Plaintiff's state law claims and agrees

with him that Plaintiff's complaint is deficient with regard those claims.

The supplemental jurisdiction statute counsels that a district court "may decline to exercise supplemental jurisdiction over" a state law claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). As the Third Circuit has articulated, "the district court <u>must</u> decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." <u>Jacobowitz v. M&T Mortg. Corp.</u>, 372 F. App'x 225, 228-29 (3d Cir. 2010) (emphasis in original) (quoting <u>Borough of W. Mifflin v. Lancaster</u>, 45 F.3d 780, 788 (3d Cir. 1995)). In this particular case, the Court concludes that no such affirmative justification exists to exercise supplemental jurisdiction, and will accordingly dismiss Plaintiff's state law claims without prejudice to re-filing them in an appropriate state forum.

## IV.    CONCLUSION

For the foregoing reasons, the Court will adopt Magistrate Judge Carlson's Report and Recommendation, dismiss Plaintiff's federal law claims with prejudice, and dismiss the balance of his complaint without prejudice to re-filing his state law claims in state court. An order consistent with this memorandum follows.